# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 05-2424

Brian J. Hart, Appellant,

v.

Gordon H. Mansfield,
Acting Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided     November 19, 2007   )

*Virginia A. Girard-Brady,* of Lawrence, Kansas, for the appellant.

*John H. Thompson*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *James B. Cowden*, all of Washington, D.C., for the appellee.

Before GREENE, *Chief Judge*, and MOORMAN and LANCE, *Judges*.

GREENE, *Chief Judge*: Veteran Brian J. Hart appeals, through counsel, a June 21, 2005, decision of the Board of Veterans' Appeals (Board) that denied an increased rating for his VA service-connected left-knee disability, currently rated as 10% disabling. Record (R.) at 1-13. Mr. Hart argues: (1) VA improperly developed negative evidence to deny his claim; (2) the Board erred by failing to consider staged ratings before denying his claim; and (3) the Board failed to provide an adequate statement of reasons or bases for finding that the opinion of his private physician was not as probative as a more recent VA examiner's opinion. For the reasons set forth below, the June 2005 decision of the Board will be vacated and the matter remanded to the Board for further adjudication.

## I. BACKGROUND

Mr. Hart served honorably in the U.S. Army from July 1980 to June 1988. R. at 2. While in service, in 1981, he injured his left knee. R. at 29. After separation from service, VA awarded him

service connection for a left-knee disability, and assigned him a 10% disability rating. *See* R. at 32, 76. He did not appeal, and that decision became final. *See* R. at 1-111.

In May 2001, Mr. Hart sought an increased disability rating for his left-knee disability. R. at 22. He submitted an April 2001 orthopedic examination report performed by his private physician, Dr. Michael Clarke, that revealed that Mr. Hart had some anterior cruciate ligament laxity and moderate chondromalacia patella. R. at 18. The physician opined that both conditions "could well be secondary to his knee problem he experienced in the service in 1981." *Id.* During a January 2002 VA joints examination, the examiner reported that Mr. Hart complained only that his left knee was "popping." R. at 29. The knee examination showed that he had full flexion and extension without pain and revealed no evidence of ligament laxity. R. at 30. X-rays evidenced minimal degenerative joint disease of the left knee with a question of a small loose body in the knee joint. R. at 36. That same month, a VA regional office (RO) denied Mr. Hart's increased-rating claim (R. at 32-34), and he appealed (R. at 52, 79).

In April 2002, Dr. Clarke reexamined Mr. Hart and reviewed the January 2002 VA examination report. R. at 20. Dr. Clarke stated again that his examination showed evidence of laxity of the anterior cruciate ligament. *Id.* He also heard popping of the knee and noted that Mr. Hart had generalized degenerative joint disease in the knee. *Id*. Dr. Clarke opined that Mr. Hart "has a 10% to 15% permanent partial impairment of function of the body as a whole[,] secondary to his left knee[, and] has some additional impairment secondary to the degenerative changes." *Id.*

After receiving a Statement of the Case from VA in April 2003 (R. at 62-77), Mr. Hart perfected his appeal to the Board in May 2003 (R. at 79). In March 2004, the RO received an October 2002 VA orthopedic consultation report which stated that x-ray evidence suggested that Mr. Hart had left-knee osteoarthritis. R. at 81-82. In January 2005, Mr. Hart was given another VA joints examination that found no effusion, and noted that ligament testing was negative. R. at 85. The VA examiner further reported that Mr. Hart had some tenderness with forced extension and flexion to 130 degrees without pain. *Id.*

In its June 2005 decision, the Board found that the most recent evidence did not show moderate recurrent subluxation or lateral instability warranting a rating greater than 10% for Mr. Hart's left-knee disability pursuant to 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5257 (2004). R. at 8. This appeal followed.

2

## II. LAW and ANALYSIS

### A. 2005 VA Examination

Mr. Hart contends that the evidence of record prior to the 2005 VA examination was sufficient to rate his disability and that there was no indication that his disability had materially changed so as to require the 2005 VA examination. Thus, he maintains that the Board erred by scheduling that examination. The Secretary concedes that the Board did not find the examinations from 2001 and 2002 inadequate, but argues that Mr. Hart presented evidence that his condition materially changed when he submitted the October 2002 VA orthopedic report (R. at 81-82).

The Secretary has a duty to assist a claimant by providing a thorough and contemporaneous medical examination when the record does not adequately reveal the current state of the claimant's disability. *See* 38 U.S.C. § 5103A(d)(1); *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991); *see also Caffrey v. Brown*, 6 Vet.App. 377, 381 (1994). However, VA may not pursue such development if the purpose is to obtain evidence against the claim. *See Mariano v. Principi*, 17 Vet.App. 305, 312 (2003); *see also* 38 C.F.R. § 3.304(c) (2007) (development of evidence should not be undertaken when evidence present is sufficient for service connection determination). The record is inadequate and the need for a contemporaneous examination occurs when the evidence indicates that the current rating may be incorrect. 38 C.F.R. § 3.327(a) (2007); *see* 38 U.S.C. § 5103A(d)(2); *Snuffer v. Gober*, 10 Vet.App. 400, 403 (1997) ("[W]here the appellant complained of increased hearing loss two years after his last audiology examination, VA should have scheduled the appellant for another examination."); *Caffrey*, 6 Vet.App. at 381 (finding 23-month-old examination too remote to be contemporaneous where appellant submitted evidence indicating disability had since worsened); *see also Palczewski v. Nicholson*, 21 Vet.App. 174, 182-83 (2007) (for initial rating claim, mere passage of time does not trigger VA's duty to provide additional medical examination unless there is allegation of deficiency in evidence of record).

Here, Mr. Hart's left-knee disability was rated under DC 5257, which allows for a 10% disability rating for slight recurrent subluxation of the knee. To warrant a higher rating, the evidence must demonstrate either moderate (20%) or severe (30%) recurrent subluxation or lateral knee instability. *See* 38 C.F.R. § 4.71a, DC 5257. However, in March 2004, while Mr. Hart's increased-rating claim was pending, the Board received the October 2002 VA examination report, which

contained the opinions that he had "some fullness behind the knee" that may be a Baker's cyst[1], and recorded that an x-ray showed evidence of mild osteoarthritis of the left knee. R. at 82. Given the length of time that had passed while the Board was adjudicating Mr. Hart's appeal and the possibility of entitlement to a separate disability rating under DC 5003 for arthritis with limitation of motion, the RO acted reasonably by scheduling another VA examination to ensure a complete picture of the extent of Mr. Hart's left-knee disability. Supplemental R. at 49 (requesting VA examiner to provide range of motion measurements for Mr. Hart's left knee); *see Francisco v. Brown*, 7 Vet.App. 55 (1994) ("present level of disability is of primary concern" for increased-rating claims); 38 C.F.R. § 4.71a, DC 5003; *see also* VA Gen. Couns. Prec. 23-97 (July 1, 1997) ("A claimant who has arthritis and instability of the knee may be rated separately under [DCs] 5003 and 5257."). After conducting the January 2005 examination, the VA examiner found, inter alia, that Mr. Hart had a trace Baker's cyst and noted that x-rays of his left knee were unremarkable. R. at 85. The examiner further found that Mr. Hart was able to flex his knee to 130 degrees without pain and extend his leg to 40 degrees with pain. *Id*. Given these circumstances, there is no evidence that VA acted impermissibly in scheduling this rating examination and Mr. Hart's assertion that it was inappropriate is without merit. *See* 38 U.S.C. § 5103A; 38 C.F.R. § 3.327(a).

## B. Staged Ratings

Mr. Hart argues that the Board erred by failing to consider the applicability of staged ratings for his increased-rating claim. The Secretary concedes that staged ratings may be applicable in increased-rating claims, but asserts that staged ratings are not warranted by the facts of Mr. Hart's claim. Whether it is appropriate to apply staged ratings when assigning an increased rating is a question of first impression that we will now address.

### 1. *Availability of Staged Ratings for Increased Ratings*

It is well established that, at the time of an initial rating, separate ratings can be assigned for separate periods of time based on the facts found–a practice known as staged ratings. *Fenderson v. West*, 12 Vet.App. 119, 126 (1999). This practice for rating a service-connected disability accounts "for the possible dynamic nature of a disability while the claim works its way through the

---

[1]A Baker's cyst is defined as a swelling behind the knee, caused by escape of synovial fluid which has become enclosed in a sac of membrane. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 466 (31st ed. 2007).

adjudication process." *O'Connell v. Nicholson,* 21 Vet.App. 89, 93 (2007); *see also* 38 C.F.R. § 4.1 (2007) ("Over a period of many years, a veteran's disability claim may require reratings in accordance with changes in . . . his or her physical or mental condition."). In cases where staged ratings are appropriate, the Secretary must consider all of "the evidence of record from the time of the veteran's application." *Fenderson*, 12 Vet.App. at 127.

When a claim for an increased rating is granted, the effective date assigned may be up to one year prior to the date that the application for increase was received if it is factually ascertainable that an increase in disability had occurred within that timeframe. 38 U.S.C. § 5110. Accordingly, the relevant temporal focus for adjudicating an increased-rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. *Cf. Moore v. Nicholson*, 21 Vet.App. 211, 216-17 (2007) (for initial disability rating, VA must consider severity of disability during period for which veteran is eligible for service connection starting on date application was filed). While older evidence is not necessarily irrelevant, it is generally not needed to determine the effective date of an increased rating. *See Francisco, supra.* If VA's adjudication of an increased-rating claim is lengthy, a claimant may experience multiple distinct degrees of disability that would result in different levels of compensation from the time the increased-rating claim was filed until a final decision on that claim is made. Thus, VA's determination of the "present level" of a disability may result in a conclusion that the disability has undergone varying and distinct levels of severity throughout the entire time period the increased-rating claim has been pending. *Cf. McClain v. Nicholson*, 21 Vet.App. 319, 323 (2007) (Board finding that veteran had disability "at some point during the processing of his claim," satisfied service-connection requirement for manifestation of current disability); *Moore, supra*. Considering these reasons and the Secretary's concession, we find no basis for drawing a distinction between initial ratings and increased-rating claims for applying staged ratings. Accordingly, we hold that staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings.

2. *Applicability of Staged Ratings in this Case*

Here, the Board found:

> [T]he VA examination findings obtained subsequent to the private evaluations, to include the most recent VA examination in 2005, show that [Mr. Hart] was negative for left[-]knee joint instability. Further, there is no objective medical evidence of left[-]knee joint instability since Dr. Clarke's April 2002 report. For these reasons, the Board finds that there is *no current objective medical evidence of recurrent subluxation or lateral instability of [Mr. Hart]'s left[-]knee joint. As the current evidence does not show moderate recurrent subluxation or lateral instability, an increased rating (i.e., 20 percent) under [DC] 5257 is not warranted*.

R. at 8 (emphasis added). Mr. Hart's claim for an increased rating was pending before VA for more than four years, during which time he received several medical opinions regarding the lateral stability of his left knee–a criterion for evaluating a disability under DC 5257. *See* 38 C.F.R. § 4.71a, DC 5257. Notably, the Board did not find that the 2005 VA examination report rendered Dr. Clarke's April 2002 findings on Mr. Hart's left-knee instability inaccurate or not probative. *See* R. at 1-13. Thus, the Board provided no basis for its determination that there was no medical evidence of left-knee instability during the time period relevant to Mr. Hart's May 2001 increased-rating claim. Although the Secretary argues that, even uncontested, Dr. Clarke's opinion relating to moderate recurrent subluxation or lateral instability, is insufficient to support an increased rating under DC 5257 for Mr. Hart's left-knee disability, that is not a determination for the Court to make in the first instance. As with an initial rating, the question of whether the evidence is in conflict or merely demonstrates a changing level of disability is a factual question for the Board to make. *See Layno v. Brown*, 6 Vet.App. 465, 469 (1994) (weight and credibility of evidence "is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"); *see also Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the expert [Board], not by the Veterans Court."); *Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (it is Board's duty to determine probative weight of evidence). Further, even if the Board finds that the most recent VA examination reveals that Mr. Hart no longer warrants a disability rating greater than 10%, this is not a bar to assigning staged ratings if the Board finds that his disability warranted a higher rating at some point during the processing of his claim for an increased rating. *See McClain*, 21 Vet.App. at 323 (condition that resolved itself during processing of claim warranted service connection with staged ratings); *see also Ardison v. Brown*, 6 Vet.App. 405, 408 (1994) (claim for disease with cyclical manifestation of

symptoms may require examination during active stage to reveal current state). Accordingly, that assessment issue must be remanded for the Board to provide an adequate statement of reasons or bases concerning whether Mr. Hart is entitled to any staged ratings higher than 10%, based on the Board's factual findings that he had left-knee instability in April 2002, but not in January 2005. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate remedy where Board has incorrectly applied law or failed to provide adequate statement of reasons or bases).

### C. Reasons or Bases for Favoring the 2005 Examination

Mr. Hart further argues that the Board failed to provide an adequate statement of reasons or bases for favoring the opinions of VA examiners over the opinion of his treating physician, Dr. Clarke. When weighing the evidence, the Board may favor one medical opinion over another; however, the Board must provide an adequate statement of reasons or bases for that determination. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995). Although the Board is not free to ignore the opinion of a treating physician, it is free to discount the credibility of that physician's statement after considering it along with the other available evidence. *See Guerrieri v. Brown*, 4 Vet.App. 467, 471-73 (1993); *Sanden v. Derwinski*, 2 Vet.App. 97, 101 (1992).

As recognized earlier, the Board decision here on appeal did not find the 2005 VA examination more probative than Dr. Clarke's 2001 and 2002 opinions for the *entire time period* relevant to Mr. Hart's increased rating claim. *See* R. at 8. Further, because on remand Mr. Hart's disability must be assessed for any staged ratings, the Board will necessarily have to determine whether the 2005 VA examination reveals the state of Mr. Hart's disability that has existed since before he filed his appeal, and any inconsistences between the medical examinations must be considered and reconciled at that time. On remand, Mr. Hart may present additional evidence and raise any additional arguments to the Board. *See Kay v. Principi*, 16 Vet.App. 529, 535 (2002). The Board should proceed expeditiously on this matter. *See* 38 U.S.C. §§ 5109B and 7112.

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings,

7

the June 21, 2005, Board decision is VACATED and the matter is REMANDED to the Board for further adjudication.